ACCEPTED
03-15-00335-CV
6286512
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/30/2015 9:54:05 AM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00335-CV

## IN THE THIRD COURT OF APPEALS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/30/2015 9:54:05 AM
JEFFREY D. KYLE
Clerk

## HERBERT ROLNICK

### v.

## SIGHT'S MY LINE, INC, et al

### Accelerated Appeal from the 200ᵗʰ District Court
### Travis County, Texas

### Brief of Appellee Riggs, Aleshire & Ray, P.C.

KIDD LAW FIRM
819 West 11ᵗʰ Street
Austin, TX 78701
512-330-1709 (fax)
Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com

# TABLE OF CONTENTS

Table of Contents                                                          i

Index of Authorities                                                       ii

Caption                                                                    1

Statement of Facts                                                         1

Summary of Argument                                                        7

Argument & Authorities                                                     8

    Standard of Review                                 8

    No Error In Denial Of Unsworn Special Appearance    9

    Rolnick's Contacts Meet The "Minimum Contacts"
    Test For Jurisdiction in Texas                      12

    Analysis Of The Jurisdictional Facts                15

    Fair Play And Substantial Justice                   22

Conclusion                                                                 25

Prayer                                                                     26

Certificate of Compliance                                                  26

Certificate of Service                                                     27

# INDEX OF AUTHORITIES

## Cases

*Abilene Diagnostic Clinic, PLLC v. Paley, Rothman,*
*Goldstein, Rosenberg, Eig & Cooper, Chartered,*
364 S.W.3d 359 (Tex. App.—Eastland 2012, no pet.)　　19

*Ahrens & DeAngeli v. Flinn,* 318 S.W.3d 474 (Tex.App.—
Dallas 2010, pet. denied)　　19

*Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d
801 (Tex. 2002)　　14

*BMC Software Belgium, N.V. v. Marchand,*
83 S.W.3d 789 (Tex. 2002)　　8, 9, 13

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)　　22, 23

*Casino Magic Corp. v. King,* 43 S.W.3d 14 (Tex. App.—
Dallas 2001, pet. denied)　　10, 11

*CSR Ltd v. Link,* 925 S.W.2d 591 (Tex. 1996)　　12

*Guardian Royal Exch. Assurance, Ltd v. English*
*China Clays, P.L.C.,* 815 S.W.2d 223 (Tex. 1991)　　15, 23

*Kelly v. Gen. Interior Construction, Inc.,*
301 S.W.3d 653 (Tex. 2010)　　12, 13

*Kytel International Group, Inc. v. Rent-A-Center, Inc.,*
132 S.W.3d 717 (Tex. App.—Dallas 2004, no pet.)　　11

*Markette v. X-Ray X-Press Corp.,* 240 S.W.3d 464
Tex. App.—Houston[14th Dist.] 2007, no pet.)　　20

*Michiana Easy Livin' Country, Inc. v. Holten,*
168 S.W.3d 777 (Tex. 2005)　　14, 15, 19, 20

*Moki Mac River Expeditions v. Drugg,*
221 S.W.3d 569 (Tex. 2007)             12, 13, 14

*Moncrief Oil International, Inc. v. OAO Gazprom,*
414 S.W.3d 142 (Tex. 2013)             13, 15

*Proskauer Rose LLP v. Pelican Trading, Inc.,*
2009 WL 242993 (Tex. App.—Houston [14th Dist.] 2009)   20, 22

*Prosperous Maritime Corp. v. Farwah,* 189 S.W.3d 389
(Tex. App.—Beaumont 2006, no pet.)           10, 11

*Retamco Operating, Inc. v. Republic Drilling,*
278 S.W.3d 333 (Tex. 2009)             13

*Siemens AG v. Houston Casualty Company,*
127 S.W.3d 436 (Tex. App.—Dallas 2004, no pet.)       11

*Villapando v. De La Garza,* 793 S.W.2d 274
(Tex. App.—Corpus Christi 1990, no writ)         10

*York v. State,* 73 Tex. 651, 11 S.W. 869 (1889),
aff'd 137 U.S. 15, 11 S.Ct. 869 (1889)            9

Statutes and Rules

TEX. CIV. PRAC. & REM. CODE §17.41            12

TEX. R. CIV. P. 120a               9

IN THE THIRD COURT OF APPEALS

_____

HERBERT ROLNICK

v.

SIGHT'S MY LINE, INC, et al

_____

Accelerated Appeal from the 200th District Court
Travis County, Texas

**Brief of Appellee Riggs, Aleshire & Ray**

_____

Comes now Appellee Riggs, Aleshire & Ray and files this Appellee's Brief.

STATEMENT OF FACTS

Appellant's Statement of Facts includes many characterizations of the facts and omits certain important evidence. Accordingly, Appellee Riggs, Aleshire & Ray offers its own Statement of Facts.

Sight's My Line, Inc., ("SML") is a Florida corporation that was engaged in the retail optical business in Texas. (CR 389, 390).  SML had

locations in several South Texas cities, and it did business only in Texas. (CR 390, 514). The sole stockholder of SML was Stewart Lantz ("Lantz"), a resident of Florida. (CR 391)

Herbert Rolnick ("Rolnick") is a lawyer living in Coral Gables, Florida. (CR 502). He has represented Lantz and entities in which Lantz has been involved for over twenty years. (CR 382). Rolnick represented Lantz in the formation of SML. (CR 390, 503).

In 2009, SML came under investigation by the Texas Health & Human Services Commission related to a possible overcharge claim. (CR 389, 548). To represent SML in that investigation, Lantz retained Jason Ray ("Ray"), a member of Riggs, Aleshire & Ray ("RAR"). (CR 548). Ray is Board Certified in Administrative Law by the Texas Board of Legal Specialization. (CR 548).

Lantz had engaged in some initial negotiations with American Optical Services ("AOS") about a potential sale of the assets of SML to AOS, but those negotiations had not progressed and Lantz had abandoned the process. (CR 503-504). However, in June 2012, Lantz decided that he should again pursue sale of the SML business due to his perception of the regulatory climate related to the business. (CR 382). Negotiations with AOS began again. (CR 504).

2

AOS is a Delaware Corporation with its principal place of business in Nevada. The parties did negotiate a contract for sale of the assets of SML to AOS, and that contract was dated October 5, 2012. Rolnick represented SML in the negotiations and sale for a flat fee of between $40,000.00 and $50,000.00. (CR 394, 514). The negotiations for the sale were all handled by Rolnick. (CR 391, 505, 559).

On or about October 1, 2012, Lantz and Rolnick telephoned Ray. (CR 384, 391, 505, 549-550). They explained to Ray that Lantz had contracted to sell the assets of SML, and they wanted a Texas lawyer to review some of the documents. (CR 549). There is a dispute in the evidence concerning whether Ray informed Lantz and Rolnick that Ray did not feel qualified to review documents related to an asset sale. Ray testified that he did inform them of that fact and indicated that he did not want to undertake the review. (CR 549,551) According to Ray's testimony, Lantz and Rolnick stated that they wanted him involved in the transaction anyway. (CR 549). According to Lantz and Rolnick, they were not informed of any limitations on Ray's ability to review the documents. (CR 385, 506). Ray also testified that he informed Lantz and Rolnick that he would have another lawyer, Paul Browder, an attorney

with Blazier, Christensen, Bigelow & Virr ("BCBV"), review the documents--testimony that Lantz and Rolnick dispute. (CR 549).

Ray had one more conversation with Rolnick shortly after the initial conversation with Lantz and Rolnick. Ray then received an email from Rolnick's legal assistant with instructions as to what Rolnick wanted Ray to do. (CR 506-507, 552).

> "Mr. Rolnick is out of the country this week, however, pursuant to your previous conversation with him, he asked that I forward you a copy of the Security Agreement and Promissory Note (which are attached to this email). Also attached you will find a copy of the fully executed copy of the Agreement so you have some understanding of the transaction. Mr. Rolnick would like you to review the Security Agreement and Promissory Note and confirm that these are acceptable for Texas law, i.e. that they can be recorded and that they would enable us to foreclose in the event of a default." (CR 424)

Ray received the executed contract, draft security agreement, and draft promissory note. Ray then forwarded those documents to Browder for his review. (CR 550). Browder made comments and raised questions with regard to the documents. (CR 550). Ray then took those comments and questions, incorporated them into an email, and forwarded them to Rolnick. (CR 550).

Among the provisions of the promissory note was a reference that the security interest would be recorded in Delaware. The specific

language in the promissory note stated "Holder may file a Form UCC-1 with the Secretary of State of the State of Delaware to perfect such lien of record." (CR 486). Contrary to the assertion by Appellant in his Statement of Facts that "comments by Ray sent back to Rolnick in Florida, however, included one indicating the UCC-1 instead should be filed in Texas where the assets at issue were located," what Browder actually raised, and what was passed on in Ray's email, was a question. The actual question that was raised was as follows:

"Where will the assets be held? Texas, right? Shouldn't the UCC-1 be filed where the assets are located?"

Rolnick never contacted Ray to resolve those questions. (CR 508, 553) Rolnick proceeded to close the transaction on November 1, 2012, and Ray had no knowledge of or participation in the drafting of the final documents or the closing. (CR 508-510, 560).

The next time Ray had any participation in the transaction at all (or even knew that it had closed) was when he was contacted by Rolnick with a direction to record the UCC-1 in Texas approximately two months after the transaction had closed. (CR 555-556, 560, 562). Ray at first declined because he did not know procedurally how to do so. (CR 562). Rolnick prevailed on Ray to do so for him since Ray was in Austin.

(CR 562). Rolnick sent the UCC-1 to Ray, and Ray forwarded it to Browder for recordation at the office of the Secretary of State. (CR 558).

Ray had no further contact with Lantz or Rolnick until over a year later when he was contacted about AOS's default. (CR 560). Rolnick contacted him about pursuing litigation to foreclose on the assets. (CR 560). Again, that was not Ray's area of practice, and SML was referred to Adams & Graham ("A&G") to pursue the litigation. (CR 387).

SML filed suit against AOS on the debt and to foreclose on the security, to the extent the collateral still existed. At that time, AOS's parent company, MacEyser Holdings, filed for bankruptcy protection in Delaware. SML filed a motion to lift stay in the bankruptcy proceeding. That motion was denied on the basis that SML had not perfected its security interest by recording the UCC-1 in Delaware. In light of that ruling, Lantz contacted Rolnick and Ray concerning the issue of perfection of the security interest. (CR 512). At that time, Rolnick was successful in diverting Lantz's attention from him to Ray. (CR 512-513).

SML and Lantz then filed suit in Travis County District Court against RAR, BCBV, and A&G. (CR 3). RAR immediately joined Rolnick as a third-party defendant, and plaintiffs then amended their pleadings to add Rolnick as a defendant. (CR 17, 137). In answer to both RAR's third-

party petition and plaintiffs' First Amended Original Petition, Rolnick filed unsworn special appearances. (CR 23, 147). Rolnick's special appearance was heard and overruled by the trial court. (CR 697).

## SUMMARY OF ARGUMENT

The requirements for filing a special appearance are stated in Rule 120a, Texas Rules of Civil Procedure. Strict compliance with the rule is required. Rule 120a requires that the special appearance be made by sworn motion. The special appearances filed by Rolnick were not sworn, and therefore were not in compliance with Rule 120a. The trial court does not commit error in overruling an unsworn special appearance.

Jurisdiction of nonresident defendants is determined based on whether the defendant has sufficient minimum contacts with Texas to support jurisdiction under the Texas Long-Arm Statute. Those minimum contacts exist if the nonresident defendant has availed himself of the privilege of conducting activities in Texas. The contact with Texas must have been purposeful, and the defendant must have sought some benefit from the contact. In addition, the assertion of such

jurisdiction must comport with traditional notions of fair play and substantial justice.

SML's business was entirely a Texas operation. All of its business activity was in Texas, and all of its assets (including its real estate interests) were in Texas. When SML sold its assets, Rolnick negotiated the contract and closed the transaction. He had Jason Ray review the promissory note and security agreement, but all decisions about perfection of the security interest were made by Rolnick. Rolnick made the decision to record the UCC-1 in Texas, and Rolnick sent it to Ray with instructions to record it in Texas. When SML's purchaser sought bankruptcy protection it was discovered that Rolnick had recorded the UCC-1 in the wrong state to properly perfect that interest. Since the suit by SML and its owner is over the failure to properly perfect that security interest, Rolnick has sufficient contacts with Texas to be subject to the jurisdiction of the Texas courts.

ARGUMENT & AUTHORITIES

Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a matter of law and is reviewed *de novo. BMC Software Belgium, N.V. v.*

*Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). If the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC* at 795.

No Error In Denial of Unsworn Special Appearance

Rule 120a was adopted to address the issue presented by *York v. State,* 73 Tex. 651, 11 S.W. 869 (1889), aff'd 137 U.S. 15, 11 S.Ct. 869 (1889). The court in *York* held that any appearance, even one to challenge service or jurisdiction, constituted a general appearance. This resulted in there being no direct way that a nonresident defendant could challenge the court's jurisdiction over that defendant. That continued to be the law in Texas until the Supreme Court of Texas adopted Rule 120a in 1962. Rule 120a provided a vehicle for a defendant to challenge the court's *in personam* jurisdiction without the challenge itself constituting a general appearance.

Rule 120a provides specific requirements to which the special appearance must conform. These requirements include, among others, that the "special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading, or motion…."

9

The motion must be heard before a motion to transfer venue or any other plea or pleading.

RAR was an original defendant in the Plaintiffs' Original Petition. (CR 3). Upon filing its original answer, Herbert Rolnick was immediately added as a third-party defendant by RAR. (CR 17). Rolnick filed a special appearance to the third-party petition filed by RAR, and the plaintiffs then amended and added Rolnick as an additional defendant. (CR 137). Rolnick again filed a special appearance as to the plaintiff's First Amended Original Petition. (CR 147). Neither of the special appearances filed by Rolnick were sworn as required by Rule 120a. Rolnick did file two nearly identical affidavits in conjunction with the special appearances he filed. However, in those affidavits Rolnick swears to the facts stated in the affidavits but does not swear to the facts stated in the special appearances he filed. (CR 35, 159).

Strict compliance with the rule governing special appearances is required. *Casino Magic Corp. v. King,* 43 S.W.3d 14 (Tex. App.—Dallas 2001, pet. denied). A trial court does not commit error in denying an unsworn special appearance. *Casino Magic Corp* at 18; *Villapando v. De La Garza,* 793 S.W.2d 274, 276 (Tex. App.—Corpus Christi 1990, no writ); *Prosperous Maritime Corp. v. Farwah,* 189 S.W.3d 389, 392 (Tex.

App.—Beaumont 2006, no pet.). When the affidavits attached to the special appearance pleadings do not state that the facts set out in the pleadings are true and correct, but instead state only that the facts in the affidavits are true and correct, the affidavits do not verify the special appearance. *Prosperous Maritime* at 393-394; *Casino Magic* at 18. The courts have routinely upheld the denial of a special appearance on the basis that the nonresident failed to file a sworn motion. See *Kytel International Group, Inc. v. Rent-A-Center, Inc.,* 132 S.W.3d 717, 719 (Tex. App.—Dallas 2004, no pet.); *Siemens AG v. Houston Casualty Company,* 127 S.W.3d 436, 439 (Tex. App.—Dallas 2004, no pet.).

Rolnick did not file a sworn motion as required by Rule 120a. (CR 23, 147). While Rolnick did file affidavits in support of his motion, all that the affidavits did was swear to the facts stated in the affidavits. (CR 35, 159). Rolnick's affidavits did not swear to the facts stated in his special appearance. Rolnick's special appearance was not in compliance with the Rule, and therefore the trial court did not commit any error in denying the special appearance.

Rolnick's Contacts Meet the "Minimum Contacts" Test
for Jurisdiction in Texas

Jurisdiction over nonresident defendants is governed by the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE §17.41 *et seq.* The extent of the jurisdictional grant in the Texas Long-Arm Statute is to the fullest extent permitted by the federal constitutional requirements of due process. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex. 2007).

A Texas court may exercise personal jurisdiction over a nonresident defendant only if the requirements of both the due process clause of the Fourteenth Amendment to the United States Constitution and the Texas Long-Arm Statute are satisfied. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex. 1996). The assertion of jurisdiction over a nonresident is proper and consistent with due process when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Kelly v. Gen. Interior Construction, Inc.,* 301 S.W.3d 653 (Tex. 2010). The defendant has established minimum contacts with the forum state when the defendant has purposefully availed himself of the privilege of conducting activities

within the forum state, and has thus invoked the benefits and protections of the forum state's laws. *Retamco Operating, Inc. v. Republic Drilling,* 278 S.W.3d 333 (Tex. 2009); *Moncrief Oil International, Inc. v. OAO Gazprom,* 414 S.W.3d 142 (Tex. 2013).

The plaintiff (and third-party plaintiff) bears the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *Moki Mac* at 574; *BMC Software* at 793. Once the plaintiff satisfies this burden, the burden shifts to the nonresident defendant to negate all bases for personal jurisdiction alleged by the plaintiff. *Kelly v. Gen. Interior Constr., Inc.,* 301 S.W.3d 653, 658 (Tex. 2010).

As noted in *Retamco Operating, Inc,* a nonresident's contacts can give rise to either specific jurisdiction or general jurisdiction. Specific jurisdiction exists when the defendant purposefully avails himself of conducting activities in the forum state, and the cause of action arises from or is related to those contacts or activities.

In a specific jurisdiction analysis, the court must focus on the relationship between the defendant, the forum, and the litigation. *Moncrief Oil,* 414 S.W.3d at 150. There must be a substantial connection between the defendant's contacts with the forum and the operative facts

of the litigation itself. *Moki Mac,* 221 S.W.3d at 585. In the specific jurisdiction analysis, the court must focus on only the defendant's contacts with the forum. The defendant's contacts must be purposeful and not random, isolated, or fortuitous, and the defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex. 2005).

The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002). Jurisdiction is premised on the notions of implied consent that, by invoking the benefits and protections of a forum's laws, the nonresident consents to suit there. *Michiana* at 785. It is the quality and nature of the defendant's contacts with the forum state, rather than their number, that are important in analyzing minimum contacts. *Am. Type Culture Collection* at 806.

Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum state. *Moki Mac* at 575-576. When specific jurisdiction is

asserted, the minimum-contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Moncreif Oil* at 150; *Guardian Royal Exch. Assurance, Ltd v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex. 1991). The focus is on the defendant's conduct and connections with the forum state in relation to the alleged liability. *Michiana* at 788-790.

Analysis Of The Jurisdictional Facts

Rolnick was the person in charge of negotiating and closing the sale of SML's assets. (CR 391, 392). All of those assets were located in Texas, including SML's real property interests. (CR 390). Ray's participation in the transaction was minimal—he was asked to review a note and security agreement to see if they could be recorded in Texas and if SML would be able to foreclose upon default. Rolnick directed what Ray was to do, and the limitations on Ray's engagement. Ray felt that he had been engaged by Rolnick. (CR 556).

After forwarding comments and questions to Rolnick, Ray was not contacted again by Rolnick to answer any of the questions that had been raised about the documents. (CR 555-556). Instead, Rolnick made all of the decisions about the sale of the Texas assets and closed the

transaction without Ray even being informed that the transaction had closed.

Approximately two months after closing, Rolnick contacted Ray and requested that Ray record the UCC-1 for Rolnick in Texas. (CR 555-556). The UCC-1 had been drafted or approved by Rolnick, and Ray had never seen it. At first resistant, Ray eventually agreed to record the document for Rolnick with the Secretary of State. (CR 561). The decision to record it in Texas was Rolnick's decision, and Ray was merely performing a favor upon Rolnick's request. (CR 393, 562). It is no different than if Rolnick had himself recorded the UCC-l at the Secretary of State.

None of this analysis focuses on the conduct of anyone but Rolnick. He negotiated the contract for the sale of Texas assets. He negotiated the sale of Texas real estate interests. He decided how to obtain the security interest in the Texas assets. And most importantly, Rolnick directed the recordation of the UCC-1 in Texas.

The plaintiffs' claims here are focused on their claimed losses from the loss of those Texas assets. Their complaints relate to their claimed security interests in those assets, and their particular complaint is that the recordation of that security interest in Texas was negligence.

Rolnick negotiated and closed the transaction, and he made all of the decisions related to obtaining and protecting the plaintiffs' security interests. Most specifically, Rolnick is the one who had the UCC-1 recorded in Texas.

These are not fortuitous contacts with Texas. Rolnick was certainly aware where all of the assets, including the real property, were located when he undertook the representation. Rolnick made the conscious decision to record the UCC-1 in Texas, and he is the one who sent it to Texas for filing. That was certainly a purposeful contact, and was not random, fortuitous, or attenuated. These are only Rolnick's contacts with Texas, and this analysis does not consider any other person's contacts or activities.

Rolnick certainly sought to benefit from these contacts. Not only had he represented Lantz and his entities for a number of years, Rolnick made a fee of over $40,000.00 for handling this Texas sale. To say that Rolnick did not seek or obtain any benefit from his contacts with Texas (including the recordation of the UCC-1) is to turn a blind eye to the realities of the practice of law.

These contacts are directly related to the pending litigation. The plaintiffs' claimed damages are the loss of the Texas assets that were to

serve as security. The specific act about which the plaintiffs' complain is the recording of the UCC-1 in Texas, an act specifically directed by Rolnick. Jurisdiction of Rolnick is obvious based on his conduct and connections with Texas in relation to this alleged liability.

Appellant seems to argue that the conventional analysis of personal jurisdiction that applies to all other defendants does not apply to Rolnick solely because he is a lawyer. According to the argument by Appellant, there is a special "Lawyer Rule." Under that "rule" as advanced by Appellant, as long as the nonresident lawyer sits in his office in another State, he simply cannot be subject to jurisdiction in Texas no matter how much he has contact with Texas and no matter how much those contacts are the source of the Texas litigation. That is not and cannot be the law.

Lawyers do not get a free pass. The cases cited by Appellant for his odd argument are all distinguishable on their facts. In fact, each of those cases analyzes the jurisdictional issues just as Appellee has done in this brief. In those cases, the court has analyzed the quality and nature of the lawyer's contacts with Texas. In each of those cases, the court has analyzed the connections with Texas in relation to the alleged liability. Those courts did not decide that simply because the lawyer

was not physically in Texas he could not be subject to jurisdiction in Texas.

In *Abilene Diagnostic Clinic, PLLC v. Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered,* 364 S.W.3d 359 (Tex. App.—Eastland 2012, no pet.), a Texas clinic sued a Maryland law firm for alleged malpractice in the preparation of a defined benefit plan. The claim of specific jurisdiction in that case was that all of the defendants "purposefully availed themselves of the benefits of Texas law by doing business with a Texas entity." In sum, what the defendant had done is prepare several defined benefit plans in Maryland and send them to the plaintiff in Texas. As the court noted, this is the "direct-a-tort" jurisdictional theory that was rejected in *Michiana.* The court held that to determine specific jurisdiction, the court had to focus on whether there was a substantial connection between the defendant's purposeful contacts with the forum state and the operative facts of the litigation. The court noted that Texas authority had focused on where the legal work was performed, but the jurisdictional analysis on which the court determined the case was the traditional analysis of specific jurisdiction.

In *Ahrens & DeAngeli v. Flinn,* 318 S.W.3d 474 (Tex. App.—Dallas 2010, pet. denied), a Washington and Idaho law firm was sued, along

with others, for promoting an abusive tax shelter. The law firm had provided representation to one of the other defendants in the developing and marketing of the tax shelter. However, the legal work had all been performed in Washington or Idaho, and only communicated to a codefendant in Texas. The court utilized the traditional analysis in determining that there were not sufficient contacts with Texas to support personal jurisdiction. Performing legal work in one state and merely communicating with persons in another state is not enough in itself to support jurisdiction. However, in the present case, Rolnick actually took action in Texas with regard to perfecting the security interest in the collateral, and that is at the core of plaintiffs' claims in this case.

*Proskauer Rose LLP v. Pelican Trading, Inc.,* 2009 WL 242993 (Tex. App.—Houston [14th Dist.] 2009, no pet.) also involved an abusive tax shelter. The plaintiffs had been introduced to the concept of the tax shelter by their accounting firm. The accounting firm had recommended that the plaintiffs use Proskauer Rose to prepare and deliver an opinion letter on the proposed tax shelter. Proskauer Rose prepared drafts of the opinion letter, communicated with the plaintiffs (Texas residents) and ultimately prepared the opinion letter and sent it

to the Texas residents.  However, all of Proskauer Rose's work was in New York.  Again, the court conducted a traditional specific jurisdictional analysis.  Routine correspondence from the out-of-state lawyer is not the kind of purposeful contacts that support personal jurisdiction, and the sending of the opinion letter to Texas could not support jurisdiction as "directing a tort to Texas" under the holding in *Michiana.*  The present case differs markedly from the facts in *Proskauer Rose.*  In the present case, Rolnick's filing of the UCC-1 in Texas is the basis on which the plaintiffs claim liability.

*Markette v. X-Ray X-Press Corp.,* 240 S.W.3d 464 (Tex. App.— Houston [14th Dist.] 2007, no pet.) involved an Indiana attorney representing a Texas resident in an Indiana lawsuit.  The client had challenged the jurisdiction of the Indiana court, and that challenge had been denied.  The attorney wrote the Texas client and reviewed the three alternatives available to it, one of which was to allow a default judgment in Indiana and challenge the Indiana court's jurisdiction when the plaintiff in the Indiana case sought to enforce the judgment in Texas. The client adopted that strategy, and it ultimately proved unsuccessful. When the client sued the Indiana lawyer for malpractice in Texas, the court again applied a traditional specific jurisdiction analysis and

determined that it had to focus on the connection between the contacts and the litigation, and it rejected the "direct-a-tort" theory. The mere sending of a letter from one jurisdiction to another, as in *Proskauer,* differs markedly from the filing of a legal document such as a UCC-1, especially when the filing of that UCC-1 is at the core of the litigation.

Under the controlling decisions by the Supreme Court of Texas and the evidence in this record, Rolnick had sufficient minimum contacts with Texas to subject him to jurisdiction in this case. Accordingly, the District Court of Travis County has personal jurisdiction of him, and the trial court correctly decided that the minimum-contacts requirements of the Texas Long-Arm statute had been satisfied.

Fair Play and Substantial Justice

Even if a defendant has the minimum contacts with Texas to justify the assertion of jurisdiction under the long-arm statute, the court cannot exercise jurisdiction if doing so would offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985). Only in "rare cases" will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has minimum contacts with the forum state.

*Burger King* at 471. In determining whether the assertion of jurisdiction comports with fair play and substantial justice, the court considers (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Royal Guardian* at 232.

The burden on this particular defendant is certainly no greater than that on any nonresident defendant who must defend himself in another jurisdiction. However, defending himself in Texas would not put a significantly higher burden on Rolnick than defending himself in Florida, although he would probably have to travel to Texas for the trial. While the initial discovery in this case was limited to the issue of jurisdiction, Rolnick has already been deposed and it may not be necessary to depose him again. Therefore, the added burden of defending himself in Texas would be minimal, especially when compared to the additional burden on the plaintiff and other defendants in pursuing Rolnick in Florida in a separate case.

The interests of Texas in adjudicating the dispute certainly outweigh the interests of any other state in adjudicating this dispute. This dispute involves interests in Texas assets, including real property. The dispute involves the application of Texas law, and the dispute involves the adjudication of the liability of three Texas entities. Since Rolnick is the one largely (if not solely) responsible for any failure to comply with the standard of care, Texas has a significant interest in adjudicating the liability of all the parties in one suit.

The plaintiff can only get jurisdiction of RAR, BCBV, and A&G in Texas. While the plaintiffs are Florida residents, the plaintiffs must litigate their claim against the Texas defendants in Texas. It is certainly more convenient for the plaintiffs to litigate one case against all of the defendants in Texas than to litigate one case in Texas against three Texas defendants and one case in Florida against one Florida defendant. Additionally, RAR is the party who initially joined Rolnick in this litigation. It is certainly more convenient and effective for RAR to litigate one case in Texas than to have to defend the case in Texas, and if an adverse result is reached, pursue a separate case against Rolnick in Florida.

For the interstate judicial system, the most efficient resolution of this dispute is to dispose of it in one trial. Since the Texas defendants are only amenable to jurisdiction in Texas, the most efficient resolution is to try one case in Texas against all defendants, including Rolnick, rather than try one case in Texas and potentially multiple cases in Florida.

It is the rare case indeed when asserting jurisdiction over a nonresident offends the traditional notions of fair play and substantial justice if the defendant has sufficient minimum contacts to support jurisdiction. This is not that rare case. Rolnick has sufficient minimum contacts with Texas to support the assertion of jurisdiction, and the assertion of that jurisdiction does not offend traditional notions of fair play and substantial justice.

CONCLUSION

The transaction out of which this case grows was a Texas transaction involving Texas assets and Texas real property interests. Rolnick was the person who negotiated the contract, prepared all of the documents, closed the transaction, and determined to record the security interest in Texas. Rolnick's contacts with Texas, especially in the all-important recording of the UCC-1 in Texas, were not fortuitous

but rather were deliberate. If recording the UCC-1 in Texas, as Rolnick did, is the basis of liability, then Rolnick certainly had minimum contacts with Texas. If the plaintiffs are going to assert that there was negligence in the way the security interest was perfected by filing in Texas, then Rolnick needs to answer for that act. It is only fair and just that he be a party to this proceeding.

PRAYER

Wherefore, Appellee Riggs, Aleshire & Ray prays that the court affirm the order of the trial court denying Rolnick's special appearance.

KIDD LAW FIRM
819 West 11th Street
Austin, TX 78701
512-330-1709 (fax)
/s/Scott R. Kidd
Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com

Certificate of Compliance

This brief complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4. This brief was prepared using Microsoft Word for MAC, and exlusive of the exempted portions listed in Rule 9.4 contains 5157 words.

/s/Scott R. Kidd

## Certificate of Service

A copy of this brief has been served on Ruth Malinas, J. Hampton Skelton, Michael Johnson, and Robert Valdez through the electronic filing system this 29th day of July, 2015.

/s/Scott R. Kidd